## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

SEAN T. WILEY,

      Plaintiff,

    v.

UNITED STATES OF AMERICA,
CORRECTIONAL OFFICER NEWEL, DR.
CHADICK, and DR. FIGUEREDO,

      Defendants.

CIVIL ACTION NO.: 2:21-cv-125

---

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' Motion to Dismiss.  Doc. 23.

Plaintiff filed a Response in opposition.  Doc. 38.  For the following reasons, I **RECOMMEND**

the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's

Complaint against Defendants for failure to exhaust available administrative remedies, and

**DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case.

I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PROCEDURAL HISTORY

Plaintiff brought this suit asserting claims under <u>Bivens v. Six Unknown Named Agents</u>

<u>of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C.

§§ 1346(b), 2671–80 ("FTCA").  Doc. 1.  This Court ordered service of Plaintiff's claims on

February 10, 2022.  Doc. 10.

Plaintiff alleges another prisoner, Michael Pitts, attacked him while he was incarcerated

at the Federal Correctional Institute in Jesup, Georgia ("FCI Jesup"), resulting in serious head,

neck, and face injuries. Doc. 1. Plaintiff states he was beaten by Pitts for over an hour while Defendant Newell, a correctional officer, abandoned her post and ignored other prisoners' pleas to help Plaintiff. Id. at 12–13. Plaintiff alleges Defendants Chadick and Figueredo, doctors in the prison psychiatric department, knew of Pitts's "psychotic behavior issues and problems" and should have prevented Pitts's attack on Plaintiff. Id.

On May 9, 2022, Defendants filed their Motion to Dismiss. Doc. 23. The Court granted Plaintiff an extension to respond to Defendants' Motion to Dismiss on May 31, 2022. Doc. 29. However, Plaintiff failed to respond within the extension. Consequently, I recommended the Court grant as unopposed Defendants' Motion to Dismiss based on Plaintiff's failure to respond. Doc. 30. The Court dismissed Plaintiff's Complaint by order on July 21, 2022. Doc. 31.

Plaintiff filed a motion for reconsideration on September 20, 2022. Doc. 37. In Plaintiff's motion for reconsideration, he asked for additional time to respond to Defendants' Motion to Dismiss, explaining he did not receive the motion, he had not reached his final place of incarceration, and he had been quarantined due to COVID-19. Id. On October 18, 2022, the Court granted in part Plaintiff's motion for reconsideration, reopened this case, vacated its order of dismissal, and re-referred Defendants' Motion to Dismiss to the undersigned. Doc. 39. Plaintiff had also filed a Response to Defendants' Motion to Dismiss on October 12, 2022. Doc. 38. I now consider Defendants' Motion to Dismiss and Plaintiff's Response.

## DISCUSSION

Defendants argue Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies, Plaintiff fails to state a claim upon which relief may be granted, qualified immunity shields Defendants from liability, and the Court lacks subject matter jurisdiction over some of Plaintiff's FTCA claims under the discretionary function exception to

the FTCA's waiver of sovereign immunity.  Doc. 23.  As explained below, Plaintiff failed to exhaust his administrative remedies for both his FTCA claim and his <u>Bivens</u> claim, so the Court need not address Defendants' other arguments.

Before addressing the specific exhaustion issues, it is important to consider what steps Plaintiff did take towards exhaustion.  Plaintiff states he mailed a Standard Form 95 FTCA claim (the "SF-95") to the Bureau of Prisons ("BOP") Southeast Regional Office in Atlanta, Georgia ("Regional Office").  Doc. 38 at 3.  Defendants contend the Regional Office never received Plaintiff's SF-95.  Doc. 23 at 28.  When Plaintiff did not get a response from the BOP, he filed a grievance at his place of confinement to ask about the status of his SF-95.  Doc. 38-2 at 1.  Officials at the facility responded, rejecting the grievance, and informed Plaintiff the Regional Office did not receive Plaintiff's SF-95.  <u>Id.</u> at 2.  Instead of sending another SF-95 again, Plaintiff appealed the denial of his grievance to the BOP's Regional Director.  The Regional Director denied this appeal, again noting the Regional Office had not received Plaintiff's SF-95.  Doc. 23-1 at 2, 44.  Plaintiff did not appeal this rejection further.  <u>Id.</u> at 2.  Plaintiff did not attempt to resubmit the SF-95.  Plaintiff then filed this suit, asserting claims under the FTCA and <u>Bivens</u> claims.

There are separate exhaustion requirements for FTCA claims and for <u>Bivens</u> claims and the law concerning those two different requirements is unique.  Accordingly, the Court addresses Defendants' failure to exhaust defense for each separately.

## I.     Plaintiff Failed to Exhaust Administrative Remedies Regarding His FTCA Claims

### A.     FTCA Exhaustion Requirements Are Jurisdictional

Defendants challenge the Court's subject matter jurisdiction over Plaintiff's FTCA claim under Federal Rule of Procedure 12(b)(1).  Doc. 23 at 10–11; 25–28.  "[A] court should inquire

into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) (citing Fitzgerald v. Seaboard Sys. R.R., 760 F.2d 1249, 1251 (11th Cir. 1985) and Wernick v. Matthews, 524 F.2d 543, 545 (5th Cir. 1975)).  For an FTCA claim, a federal court may not exercise subject matter jurisdiction over the claim unless the claimant first presents an administrative claim to the appropriate agency within two years from the time the claim accrues.  28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 107 (1993); Turner v. United States, 514 F.3d 1194, 1200 (11th Cir. 2008); Mays v. United States Postal Service, 928 F. Supp. 1552, 1562, (M.D. Ala. 1996), aff'd, 122 F.3d 43 (11th Cir. 1997).  For FTCA claims against the BOP, like Plaintiff's claims, claimants are required to deliver or mail their administrative claims (i.e., SF-95s) to the regional office in the region where the claim occurred.  28 C.F.R. §§ 543.30–32.

When considering whether a plaintiff has exhausted administrative remedies for FTCA claims, courts presume the government received the administrative tort claim notice if the plaintiff demonstrates the following three facts: "(1) the completed document was properly addressed; (2) the document was stamped; and (3) the document was mailed.'"  Spencer v. U.S. Postal Serv., No. 3:07CV150, 2007 WL 2566031, at *3 (N.D. Fla. Aug. 31, 2007) (quoting Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1240 (11th Cir. 2002)).  If sufficiently established, the "presumption of receipt" is "not a conclusive presumption of law, but a mere inference of fact."  Barnett, 283 F.3d at 1239.  Therefore, even if the plaintiff demonstrates he is entitled to the presumption of receipt, the agency can rebut the presumption with evidence of nonreceipt. Id.

### B.      Standard of Review

"Under Federal Rule of Civil Procedure 12(b)(1), a lack of subject matter jurisdiction "can be asserted on either facial or factual grounds." Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009).  "Facial attacks challenge subject matter jurisdiction based on allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." Morrison v. Amway Corp., 323 F.3d 920, 925 n.5 (11th Cir. 2003) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).  "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." Id.  "In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." Id.  "For a Rule 12(b)(1) motion that presents a factual challenge to subject matter jurisdiction, the court may consider documents outside the pleadings without converting the motion to a motion for summary judgment." Koster v. Grafova, No. 2:17-CV-02157, 2019 WL 2124532, at *6 (N.D. Ala. May 15, 2019) (citing Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335–36 (11th Cir. 2013)).  The plaintiff bears the burden of establishing subject matter jurisdiction. Ishler v. Internal Revenue, 237 F. App'x 394 (11th Cir. 2007) (citing Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1248 n.2 (11th Cir.2005)).

### C.      Analysis

Defendants make a factual attack challenging subject matter jurisdiction.  Defendants contend Plaintiff failed to provide the required administrative notice of his FTCA claim.  Doc. 23 at 40.  Plaintiff contends he did mail a SF-95 for this claim to the appropriate Regional Office. Doc. 38 at 3.  Plaintiff argues, under Barnett, it should be presumed the BOP received the tort claim form he mailed. Id. at 4.  Defendants argue Plaintiff is not entitled to that presumption, and even if he is, Defendants can rebut the presumption.  Doc. 23 at 25–28.

Both parties offer evidence in support of their factual allegations.  Defendants submit the declaration of Kevin Littlejohn, a BOP paralegal specialist at the BOP Southeast Regional Office in Atlanta, Georgia; the declaration of Celeste Lancaster, a case management coordinator at FCI Jesup; and various BOP and FCI Jesup records.  Docs. 23-1, 23-2.  Plaintiff relies on his personal inmate records, a copy of an administrative remedy request (along with the response and related appeals documents), a copy of an informal resolution form, and a letter to the U.S. Department of Justice.  Docs. 38-1 through -4.

### 1.    *Plaintiff is not entitled to a presumption his SF-95 was received.*

As noted above, courts will presume the government received the claimant's administrative tort claim notice if a claimant demonstrates the following three facts: "(1) the completed document was properly addressed; (2) the document was stamped; and (3) the document was mailed.'"  Spencer, 2007 WL 2566031, at *3.  Plaintiff contends he is entitled to this presumption; Defendants contend Plaintiff is not.  While there is some evidence supporting Plaintiff's position, that evidence is insufficient to support the three factual perquisites for a presumption of receipt.

Plaintiff alleges he mailed his SF-95 tort claim to the BOP Southeast Regional Office on December 28, 2020.  Doc. 38 at 3.  Plaintiff states his SF-95 claim was never returned to him as undeliverable.  Id.  Plaintiff sent numerous follow-up letters to the Regional Office "requesting updates, receipt, [and] tort claim numbers" but his letters went unanswered.  Id. at 4.  Next, Plaintiff says he asked for help from his unit manager, Melissa Perrigan.  Id.  Plaintiff states Ms. Perrigan contacted the Regional Office via email and telephone.  Id.  According to Plaintiff, Ms. Perrigan said Kevin Littlejohn, at the Regional Office, told her Plaintiff's tort claim was under investigation but refused to give her a tort claim number.  Id.  On June 10, 2021, Plaintiff

submitted a BOP administrative remedy request (i.e., a grievance) at FCI Jesup, asking for a tort claim number and an acknowledgment of receipt of his SF-95.  Doc. 38-2.  On July 2, 2021, this request was rejected, with a message indicating the Regional Office had not received Plaintiff's SF-95 tort claim.  Id.  Evidence submitted by Defendants demonstrates Plaintiff appealed the rejection of his grievance to the Regional Director.  Doc. 23 at 5.  The appeal was denied with an explanation that the Regional Office had not received Plaintiff's SF-95.  Id.  Plaintiff did not appeal further.  Plaintiff did not attempt to resubmit his SF-95 to the Regional Office.  Instead, Plaintiff initiated this suit.

Defendants contend the BOP never received Plaintiff's SF-95 and Plaintiff has not sufficiently demonstrated he mailed the form.  Doc. 23 at 25.  Defendants argue Plaintiff has failed to produce a copy of his SF-95, any evidence it was mailed to the proper address, or any evidence it included the proper postage.  Id. at 27.  Defendants demonstrate the outgoing certified mail log at FCI Jesup contains no entries identifying mail from Plaintiff.  Id. at 27–28. Defendants explain Mr. Littlejohn is the "sole BOP officer at the Regional Office who sorts mail and maintains FTCA files," and Mr. Littlejohn did not receive Plaintiff's SF-95 tort claim and there is no record the SF-95 was ever received.  Id. at 28.  Also, Mr. Littlejohn denies he ever had a conversation with Ms. Perrigan about Plaintiff's FTCA claim.  Doc. 23-1 at 2–3.

Based on this record, I find Plaintiff has not a sufficient showing that he mailed, addressed, or stamped his SF-95 form.  As to mailing, the evidence supporting Plaintiff's allegation that he mailed his SF-95 is limited to Plaintiff's own contention and evidence that Plaintiff made some effort to find out the status of the SF-95.[1]  Specifically, Plaintiff's

---

[1]     Notably, Plaintiff only includes this allegation in his Response to Defendants' Motion to Dismiss. Doc. 38 at 3.  This Response was not made under oath.  Plaintiff did attach his own "affidavit" to his Response, dated January 15, 2021, but that affidavit does not address exhaustion of administrative remedies.

administrative remedy records show Plaintiff inquired about his SF-95 form with his unit manager in an informal resolution request, Plaintiff filed a BP-9 grievance about the status of the SF-95, and Plaintiff appealed the denial of that grievance.  Docs. 38-2; 38-3; 23-1 at 44.  This evidence shows Plaintiff consistently recited the same date he mailed his SF-95—December 28, 2020—in his informal resolution request and in his administrative remedy request.  The evidence of Plaintiff's consistent follow-up communications supports Plaintiff's contention that he mailed the form.  See Barnett, 283 F.3d at 1238–39 (holding there is no reason to conclude plaintiff failed to mail his SF-95, where plaintiff claimed he mailed it, without proof he did not deposit it in the mail).  However, this evidence is not sufficient to give rise to an inference of fact that Plaintiff did, in fact, mail the SF-95 form.  Plaintiff did not retain a copy of the SF-95 form.  There is no documentary evidence showing Plaintiff placed the SF-95 form in the mail.  Plaintiff points to no corroborating evidence to support his claim that he mailed the SF-95, other than the fact that he tried to find out the status in the months following the alleged submission of the form.  So, while there is some evidence supporting Plaintiff's claim he mailed the SF-95 form, it is not sufficient to establish an inference that Plaintiff did mail the form.

Even if Plaintiff had established he mailed the SF-95, he fails to demonstrate the other two facts required for a presumption of receipt—addressing and postage.  As to addressing, Plaintiff points to Mr. Littlejohn's declaration and exhibits which show the Regional Office received to previous submissions from Plaintiff.  Doc. 38 at 5.   Plaintiff argues this evidence shows "there's no doubt [he] knew the correct address[.]"  Id.  Plaintiff shows that he properly addressed prior mailings, and this fact makes it more likely he properly addressed the SF-95 in this case.  However, more is needed to support the inference he did so.  In Barnett, the plaintiff provided a copy of the addressed envelope he used to mail his SF-95 to the VA, which was a

postage-paid "business reply mail" envelope the VA provided to the plaintiff.  In this case, Plaintiff shows only that he properly addressed other mail to the appropriate office in the past, but he shows no evidence that he properly addressed the relevant SF-95 in this case, aside from his knowledge of the appropriate address.  Therefore, Plaintiff fails to demonstrate he properly addressed his SF-95.

Plaintiff also fails to demonstrate he stamped his SF-95 for mailing.  To prove he provided adequate postage for the SF-95, Plaintiff provides inmate records that he contends show he "received postage for the tort form."  Docs. 38 at 4, Doc. 38-1 at 1–2.  This evidence is unconvincing.  The only discernable transactions in Plaintiff's inmate records are six sales in 2021—one in March, three in April 2021, and two in June.  Doc. 38-1 at 1.  These transactions could not be for the postage used for Plaintiff's SF-95, because the sales occurred after Plaintiff claims he mailed the claim notice on December 28, 2020.  The evidence also fails to show whether these sales were for stamps or for something else.  Each transaction is marked with an "Alpha Code" of "JES," and each transaction has a two- or three-digit reference number, but Plaintiff does not explain the significance of any of these annotations.  Plaintiff's evidence fails to sufficiently demonstrate his SF-95 form was stamped before it was mailed to the Regional Office.

In sum, Plaintiff has failed to submit evidence to give rise to an inference of fact that he properly mailed, addressed, and stamped his SF-95.  Therefore, Plaintiff is not entitled to the presumption that the BOP received his SF-95.

>    **2.      *Defendants have rebutted any presumption the FTCA claim notice was received.***

Even if Plaintiff had established the factual basis for a presumption of receipt, Defendants have successfully rebutted such a presumption.  The declarations from Mr. Littlejohn and Ms. Lancaster, taken together, provide ample and convincing evidence of nonreceipt.

Ms. Lancaster states there is no record of Plaintiff sending any certified mail in the prison's certified mail log between December 22, 2020 and January 5, 2021.  Doc. 23-2 at 1–2. This statement supports Defendants' position but does not resolve the issue.  The statement demonstrates Plaintiff did not send the SF-95 notice by certified mail, but it is possible that he sent it by non-certified mail.  In fact, Plaintiff states he did not use certified mail for his SF-95 because he is indigent and could not afford to pay for certified mail.  Doc. 38 at 4.

Mr. Littlejohn states he opens and sorts all inmate mail and records receipt of all SF-95 forms received from inmates, but he has no record of Plaintiff's claim and no memory of receiving it.  Doc. 23-1 at 2.  Mr. Littlejohn describes how the Regional Office processes mail it receives from prisoners.  In his declaration, Mr. Littlejohn explains that he is solely responsible for opening and sorting all incoming inmate mail.  Id.  Mr. Littlejohn explains that when an FTCA claim notice is received, the office sends an acknowledgement letter to the inmate verifying receipt and a notice to the institution requesting investigation of the claim, and Mr. Littlejohn creates entry in the BOP's FTCA database program.  Id.  Mr. Littlejohn states he is not aware of a single instance where an FTCA claim notice was received but the procedures described here were not followed.  Id.  Mr. Littlejohn explains there is no database entry related to Plaintiff's allegations in this case and he has no recollection of ever receiving any notification of Plaintiff's claim.  Id.

Mr. Littlejohn's testimony fully describes the procedures utilized by the Regional Office to process inmate claims.  See Barnett, 283 F.3d at 1241 ("The court would need testimony about the office's practice and procedure for receiving and filing incoming mail—that is, circumstantial evidence—in order to draw an inference that the mail was or was not received."). The testimony eliminates the possibility Plaintiff's SF-95 was received and processed by another person at the Regional Office.  This testimony is also consistent with the BOP's correspondence with Plaintiff in June and July of 2021, informing Plaintiff the Regional Office had not received Plaintiff's SF-95.  Specifically, in response to Plaintiff's grievances, the BOP Southeast Regional Office informed officers at Plaintiff's institution the Regional Office had not received an SF-95 from Plaintiff.  This evidence is sufficient to rebut any presumption the BOP received Plaintiff's SF-95.

It is worth noting that Plaintiff alleges Mr. Littlejohn told Ms. Perrigan, Plaintiff's unit manager, he had received Plaintiff's SF-95.  This allegation is not persuasive.  Mr. Littlejohn, in his declaration, states unequivocally that he did not have any conversation (oral or written) with Ms. Perrigan acknowledging receipt of Plaintiff's SF-95.  Doc. 23-1 at 2–3.  Mr. Littlejohn goes further and states he searched his email archive and concluded he did not find any email exchange with Ms. Perrigan regarding Plaintiff's FTCA claim in this case.  Plaintiff, for his part, points to an informal resolution form where he complained in June 2021 about not receiving any acknowledgment of his SF-95 from the Regional Office.  Doc. 38-3 at 1.  The "Staff Comments" portion of that form includes a handwritten remark, "Emailed about claim," and that form appears to be signed by Ms. Perrigan.  Id.  This remark provides little support for Plaintiff's position.  The remark does not say who Ms. Perrigan emailed or when.  Mr. Littlejohn's sworn testimony expressly states Ms. Perrigan never emailed Mr. Littlejohn about Plaintiff's FTCA

claim, and Mr. Littlejohn confirmed as much by searching his email records.  Beyond this one statement in the informal resolution form, Plaintiff relies entirely on his supposed conversation with Ms. Perrigan where Ms. Perrigan told Plaintiff she had a conversation with Mr. Littlejohn. Plaintiff provides no details about the conversation he had with Ms. Perrigan (e.g., date, time, or location of the conversation).  Moreover, even if Plaintiff and Ms. Perrigan had that conversation, it was only a secondhand account of a conversation between Ms. Perrigan and Mr. Littlejohn—a conversation Plaintiff was not present for.  Considering Mr. Littlejohn has testified directly that no such conversation ever occurred, Plaintiff's unsupported allegation provides little to no support for his position.  To the contrary, the most compelling evidence on this issue is the undisputed documentary evidence showing Plaintiff was informed at least twice on June and July of 2021 that the Regional Office did not receive Plaintiff's SF-95 claim notice.  Those responses confirm in writing the Regional Office did not receive Plaintiff's claim notice.[2]

Considering all this evidence together, Plaintiff fails make the required factual showing for the Court to presume the Regional Office received Plaintiff's SF-95.  Even if Plaintiff had made the required showing, Defendants present sufficient evidence to rebut any presumption of receipt.  Therefore, I find Plaintiff did not exhaust the administrative remedies for his FTCA claims, and the Court does not have subject matter jurisdiction.  Because I recommend dismissal

---

[2]      Plaintiff also attached a response letter from the U.S. Department of Justice, Civil Division, to Plaintiff's request for a SF-95 claim form.  Doc. 38-4.  Plaintiff states he had difficulty obtaining an SF-95 at FCI Jesup, so he resorted to writing to the Department of Justice to request one.  Doc. 38 at 5. However, Plaintiff's exhibit is not material to the analysis about whether the regional office received Plaintiff's claim form.  The Civil Division's response, providing a blank SF-95, is dated January 28, 2021, but Plaintiff says he mailed his SF-95 to the regional office on December 28, 2020, a month before the response letter.  Thus, the exhibit is irrelevant to whether Plaintiff properly mailed the SF-95 to the regional office a month earlier.  Furthermore, this exhibit shows Plaintiff had access to at least one blank SF-95 claim form as of January 28, 2021, but Plaintiff still failed to resubmit his claim notice.

of all Plaintiff's FTCA claims based on Plaintiff's failure to exhaust, I decline to address Defendants' other arguments for dismissal of Plaintiff's FTCA claims.

## II.   Plaintiff Failed to Exhaust Administrative Remedies for His <u>Bivens</u> Claims

Defendants also argue Plaintiff failed to exhaust his administrative remedies for his <u>Bivens</u> claims because Plaintiff did not file any grievance on the claim.  Doc. 15 at 40.

### A.   Prison Litigation Reform Act's ("PLRA") Exhaustion Requirements

Under the PLRA, an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); <u>see</u> <u>Jones v. Bock</u>, 549 U.S. 199, 202 (2007); <u>Harris v. Garner</u>, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  <u>Whatley v. Warden, Ware State Prison</u> (<u>Whatley I</u>), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  <u>Ross v. Blake</u>, 578 U.S. 632, 639 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); <u>Jones</u>, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or

needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other procedural rules.  Woodford v. Ngo, 548 U.S. 81, 91–92 (2006); Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

To properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga.

Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.      Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion.").  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Id. at 638; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded that "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates

cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 648; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.;

see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018).  This

prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-

plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing

Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if

the facts as stated by the prisoner show a failure to exhaust."  Abram, 759 F. App'x at 860

(quoting Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1209 (11th Cir.

2015)); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under

Federal Rule of Civil Procedure 12(c).").

 "If the complaint is not subject to dismissal at the first step, where the plaintiff's

allegations are assumed to be true, the court then proceeds to make specific findings in order to

resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also

Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is]

permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the

factual disputes, the court then decides whether, "based on those findings, defendants have

shown a failure to exhaust."  Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at

1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541

n.4 (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)); Glenn, 706 F. App'x at 563–

64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d

at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a

factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

    **C.**    **Applying <u>Turner</u>**

Defendants argue Plaintiff's <u>Bivens</u> claims should be dismissed because he failed to properly exhaust his administrative remedies under 28 C.F.R. §§ 542.10–19.  Doc. 23 at 13–15.

    *1.*    *The Bureau of Prisons' ("BOP") administrative remedies process.*

FCI Jesup, where Plaintiff was incarcerated at the time of his claims, utilizes the BOP procedures for prisoner grievances.  The BOP's administrative remedy procedure is codified in 28 C.F.R. §§ 542.10–19 and provides for the formal review of inmates' complaints related to their confinement.  28 C.F.R. § 542.10(a).

The first step under the BOP's administrative remedy program is to submit an Administrative Remedy Request using BP-9 form.  28 C.F.R. § 542.14.  An inmate must submit a BP-9 form to the Warden of the institution where the inmate is incarcerated, typically within 20 days of the events which form the basis of the grievance occurred.  <u>Id.</u>  The Warden must respond within 20 days of the filing of the BP-9 form, though a one-time extension of 20 days is available.  28 C.F.R. § 542.18.  An inmate may file directly with a Regional Director if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the request became known at the intuition.  28 C.F.R. § 542.14(d)(1).

If an inmate is not satisfied with the Warden's response, he may submit an appeal using a BP-10 form to the appropriate Regional Director.  28 C.F.R. § 542.15(a).  An appeal to the Regional Director (i.e., the "Regional Director Appeal") must be submitted within 20 calendar days of the date the Warden signed the response.  <u>Id.</u>  Further, the Regional Director Appeal must be accompanied by a copy or duplicate original of the BP-9 form and the Warden's

Response.  28 C.F.R. § 542.15(b).  The Regional Director must respond within 30 days of the filing of the BP-10 form, though a one-time extension of 30 days is available.  28 C.F.R. § 542.18.

If an inmate is not satisfied with the Regional Director's response, he may appeal to the Central Office at the Office of General Counsel using a BP-11 form (i.e., the "Central Office Appeal").  28 C.F.R. § 542.15(a).  The Central Office Appeal must be submitted within 30 calendars days of the date the Regional Director signed the response.  Id.  Further, a Central Office Appeal must be accompanied by a copy or duplicate original of the BP-9, BP-10, the Warden's Response, and the Regional Director's response.  28 C.F.R. § 542.15(b)(1).  The Central Office must respond within 40 days of the filing of the BP-11 form, though a one-time extension of 20 days is available.  28 C.F.R. § 542.18.  The Central Office is the final administrative remedy appeal in the BOP.

Thus, inmates are required to exhaust by first filing a BP-9 form with the Warden, then appealing any undesirable response by filing a BP-10 form with the Regional Director, and finally by filing a BP-11 form with the Central Office.  For an appeal of a Regional Director Appeal or Central Office Appeal, an inmate must include a copy of the requests made at lower levels of the process, along with any responses.  An inmate is required to complete the steps at each level to exhaust his remedies.

### 2. *Plaintiff's claims fail under <u>Turner</u> step one.*

At step one under <u>Turner</u>, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true."  <u>Turner</u>, 541 F.3d at 1080–82.

Defendants allege Plaintiff failed to take any action to exhaust his <u>Bivens</u> claims under the BOP administrative remedy process.  Defendants contend Plaintiff never filed any administrative remedy request regarding the incident on September 11, 2020, and he never filed an administrative remedy request regarding the behavior of Defendants Newel, Chadick, or Figueredo.  Doc. 23 at 4–5.  Plaintiff does not dispute these allegations.  Plaintiff does not allege, in his Complaint or his response, that he filed any administrative remedy requests seeking relief from the actions of Defendants Newel, Chadick, or Figueredo under the Eighth Amendment.

Plaintiff's allegations only concern his efforts to exhaust administrative remedies related to his FTCA claims, but he made no similar effort to demonstrate he exhausted his <u>Bivens</u> claims.  As explained above, Plaintiff asserts he sent SF-95 claim notice to the Regional Office to exhaust administrative remedies as to his FTCA claim.  The submission of the SF-95 notice— even if it was sent—is plainly not an adequate attempt to exhaust Plaintiff's <u>Bivens</u> claim under the PLRA and the BOP' administrative remedy process.

On June 10, 2021, Plaintiff submitted a BP-9 grievance asking for a status update on his SF-95.  Doc. 23-1 at 2.  The BOP received this BP-9 grievance, and informed Plaintiff that the Regional Office had not received his SF-95.  <u>Id.</u>  Plaintiff filed a BP-10 level appeal to this response, and the BOP denied the appeal on July 28, 2021.  <u>Id.</u> at 2–3.  The BP-9 grievance and BP-10 appeal do not constitute exhaustion of Plaintiff's <u>Bivens</u> claims.  The grievance and appeal only concerned the status of Plaintiff SF-95, not the underlying constitutional violations. Thus, the grievance and appeal cannot serve as the basis for exhaustion of Plaintiff's <u>Bivens</u> claims.  Moreover, even if the grievance and appeal did concern Plaintiff's constitutional claims, Plaintiff never used a BP-11 form to make a final appeal to the Central Office, as required for exhaustion.

To be clear, although Plaintiff's <u>Bivens</u> claim and his FTCA claim both arise from the same facts, the law requires he pursue administrative exhaustion for each separately.  In his Complaint, Plaintiff contends, "I filed a (S.F. 95) tort claim—and it can cover all claims I have requested."  Doc. 1 at 6.  Plaintiff is incorrect.  The exhaustion requirements for the two claims are independent.  <u>See</u> <u>Lambert</u>, 198 F. App'x at 840 (11th Cir. 2006) ("Although [Plaintiff] contends that his notification under the FTCA was sufficient to exhaust his <u>Bivens</u> claims, there are separate procedures for exhausting tort claims and claims involving the conditions of confinement."); <u>Flores-Estrada v. Wombacher</u>, No. 08-22758, 2010 WL 724447, at *4 (S.D. Fla. Feb. 25, 2010) (citing <u>Lambert v. United States</u>, 198 F. App'x 835, 840 (11th Cir. 2006) ("Any notice [Plaintiff] may have given under the FTCA is not sufficient to have exhausted his available administrative remedies with regard to separate claims that arise under <u>Bivens</u>."); <u>Hilton v. Guia</u>, No. 2:17-CV-95, 2018 WL 2220257 (S.D. Ga. Mar. 19, 2018), *report and recommendation adopted,* 2018 WL 2210583 (S.D. Ga. May 11, 2018) (citing <u>Lambert</u>, 198 F. App'x at 840) ("[F]iling an FTCA claim is insufficient to meet exhaustion requirements demanded by the PLRA").

Plaintiff did not submit any administrative remedy request about Defendants' alleged constitutional violations.  Therefore, there is no dispute at <u>Turner</u> step one that Plaintiff failed to pursue exhaustion as to his <u>Bivens</u> claims.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss Plaintiff's <u>Bivens</u> claims.  Because I have recommended dismissal of all Plaintiff's <u>Bivens</u> claims based on Plaintiff's failure to exhaust, I decline to address Defendants' other arguments for dismissal of Plaintiff's <u>Bivens</u> claims.

In light of these recommendations, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss all of Plaintiff's claims. Because Plaintiff has no remaining claims, I recommend the Court **DISMISS without prejudice** Plaintiff's Complaint.

### III.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 11th day of August, 2023.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA